**JONATHAN E. NUECHTERLEIN**
General Counsel
ROBIN E. EICHEN
KAREN DAHLBERG
BRIAN N. LASKY
Federal Trade Commission
One Bowling Green, Suite 318
New York, NY 10004
Telephone:  (212) 607-2829
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**ERIC T. SCHNEIDERMAN**
Attorney General of the State of New York
JAMES M. MORRISSEY
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Telephone:  (716) 853-8471
Attorney for Plaintiff
STATE OF NEW YORK

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION, and**<br><br>**PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,**<br><br> Plaintiffs, <br><br> v. <br><br>**4 STAR RESOLUTION LLC,** a Colorado limited liability company, also doing business as Consumer Recovery Group, Four Star Capital Services, Four Star Resolution Services, LLC, and FS Mediation Group,<br><br>**PROFILE MANAGEMENT, INC.,** a New York corporation,<br><br>**INTERNATIONAL RECOVERY SERVICE LLC,** a New York limited liability company, also doing business as Financial Mediation Group, | Case No._____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

**CHECK SOLUTIONS SERVICES INC.**, a
Colorado corporation, also doing business as
County Check Services,

**CHECK FRAUD SERVICE LLC**, a Georgia
limited liability company, formerly known as
Check Fraud Services, LLC, and also doing
business as Check Services and CFS & Associates,
Inc.,

**MERCHANT RECOVERY SERVICE, INC.**, a
North Carolina corporation, also doing business as
Mandatory Arbitration Services and PDL Recovery
Services,

**FOURSTAR REVENUE MANAGEMENT
LLC**, a New York limited liability company,

**TRAVELL THOMAS**, individually, and as
principal, manager, and/or officer of 4 Star
Resolution LLC, Profile Management, Inc.,
International Recovery Service LLC, Check
Solutions Services Inc., Check Fraud Service LLC,
and Merchant Recovery Service, Inc.,

**MAURICE SESSUM**, individually, and as
principal, manager, and/or officer of 4 Star
Resolution, LLC, Profile Management, Inc.,
International Recovery Service LLC, and Check
Fraud Service LLC, and

**CHARLES BLAKELY III**, individually, and as
principal, manager, and/or officer of Merchant
Recovery Service, Inc.,

                     Defendants,

also doing business as American Asset
Management, American Asset Recovery, Asset
Retention Services, Check Services International,
County Arbitration, LLC, Debt Resolution
Services, District Restitution Services, Four Star
Mediation Group, Global Management Group,
Hansen Law Firm, IRG & Associates, PDL
Recovery Services, PMI & Associates, Inc., PMR
Law Group, Profile Arbitration Enforcement, and
other business names.

Plaintiffs the Federal Trade Commission ("FTC") and The People of the State of New York ("State of New York") (collectively, "Plaintiffs") for their Complaint allege:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FDCPA, 15 U.S.C. §§ 1692-1692p, in connection with the collection of debt or purported debt.

2.     The State of New York, by and through the Office of the Attorney General ("OAG"), brings this action under New York Executive Law § 63(12) and New York General Business Law Article 22-A, § 349, and Article 29-H, § 602, to obtain damages, restitution, injunctive and equitable relief and penalties of up to $5,000 for each violation of General Business Law Article 22-A.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1692*l*. Subject matter jurisdiction is conferred upon this Court with respect to the supplemental state law claims of the State of New York by 28 U.S.C. § 1367.

4.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFFS

5.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the FDCPA, 15 U.S.C. §§ 1692-1692p, which prohibits deceptive, abusive, and unfair debt collection practices.

6.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), and 1692*l*(a). Section 814 of the FDCPA further authorizes the FTC to use all of the functions and powers of the FTC under the FTC Act to enforce compliance by any person with the FDCPA. 15 U.S.C. § 1692*l*.

7.      The State of New York, by its Attorney General, is authorized to take action to enjoin (i) repeated and persistent fraudulent and illegal business conduct under New York Executive Law § 63(12); (ii) deceptive business practices under New York General Business Law § 349; and (iii) illegal debt collection practices under General Business Law § 602; and to obtain legal or equitable relief, including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate.

## DEFENDANTS

8.      Defendants are "debt collectors" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

2

9.      Defendants are "principal creditors" to whom a debt is owed, due, or asserted to be owed or due, or agents of principal creditors, as defined in Section 600 of New York General Business Law.

## Corporate Defendants

10.     Defendant 4 Star Resolution LLC ("4 Star Resolution"), also doing business as Consumer Recovery Group, Four Star Capital Services, Four Star Resolution Services, LLC, and FS Mediation Group, is a Colorado limited liability company that has held itself out as doing business from addresses including the following: 1839 Seneca Street, Buffalo, New York; 2400 Seneca Street, Buffalo, New York; 3735 Genesee Street, Cheektowaga, New York; 2800 Walden Avenue, Cheektowaga, New York; 4779 Transit Road, Suite 8, Depew, NY; and 4 Robert Speck Parkway, Mississaugua, Ontario, Canada. 4 Star Resolution transacts or has transacted business in this district and throughout the United States.

11.     Defendant Profile Management, Inc. ("Profile Management") is a New York corporation that has held itself out as doing business from 1839 Seneca Street, Buffalo, New York. Profile Management transacts or has transacted business in this district and throughout the United States.

12.     Defendant International Recovery Service LLC ("International Recovery Service"), also doing business as Financial Mediation Group, is a New York limited liability company that has held itself out as doing business from addresses including the following: 3735 Genesee Street, Cheektowaga, New York; 3806 Union Road, Cheektowaga, New York; and 3843 Union Road, Cheektowaga, New York. International Recovery Service transacts or has transacted business in this district and throughout the United States.

13.     Defendant Check Solutions Services Inc. ("Check Solutions Services"), also doing business as County Check Services, is a Colorado corporation that has held itself out as

3

doing business from addresses including the following: 655 Pullman Avenue, Rochester, New York; 6039 Fallsview Boulevard, Suite 2000, Niagara Falls, Ontario, Canada; and 147-7000 McLeod Road, Niagara Falls, Ontario, Canada.  Check Solutions Services transacts or has transacted business in this district and throughout the United States.

14.     Defendant Check Fraud Service LLC ("Check Fraud Service"), formerly known as Check Fraud Services, LLC, also doing business as Check Services and CFS & Associates, is a Georgia limited liability company that has held itself out as doing business from addresses including the following: 2905 Jordan Court, Suite B-205, Alpharetta, Georgia; 178 Alpharetta Highway, Suite 375, Alpharetta, Georgia; 3070 Windward Plaza, Suite F295, Alpharetta, Georgia, and 12850 Highway 9, Suite 600, Alpharetta, Georgia.  Check Fraud Service transacts or has transacted business in this district and throughout the United States.

15.     Defendant Merchant Recovery Service, Inc. ("Merchant Recovery Service"), also doing business as Mandatory Arbitration Services and PDL Recovery Services, is a North Carolina corporation that has held itself out as doing business from addresses including the following:  8514 McAlpine Park Drive, Suite 280, Charlotte, North Carolina and an apartment building in Charlotte, North Carolina.  Merchant Recovery Service transacts or has transacted business in this district and throughout the United States.

16.     Defendant Fourstar Revenue Management LLC ("Fourstar Revenue Management") is a New York limited liability company that was formed on or about March 31, 2014, and has held itself out as doing business from addresses including the following:  1839 Seneca Street, Buffalo, New York and 7900 East Union Avenue, Suite 1100, Denver, Colorado. Fourstar Revenue Management transacts or has transacted business in this district and throughout the United States.

4

## Individual Defendants

17.     Defendant Travell Thomas ("Thomas") is or has been a principal, owner, manager, and/or officer of 4 Star Resolution, Profile Management, International Recovery Service, Check Solutions Services, Check Fraud Service, Merchant Recovery Service, and Fourstar Revenue Management (collectively, the "Corporate Defendants"). Thomas formed Check Solutions Services, Check Fraud Service, and Fourstar Revenue Management. He is or has been a signatory for the deposit and/or checking accounts at Bank of America, N.A. ("Bank of America") and RBS Citizens, N.A. ("RBS Citizens") for 4 Star Resolution, Profile Management, International Recovery Service, Merchant Recovery Service, and Check Fraud Service. In addition, he is or has been on the payroll of 4 Star Resolution, Profile Management, International Recovery Service, and Check Fraud Service, and received payments from Merchant Recovery Service. Thomas shared or has shared an office with Defendant Maurice Sessum at 1839 Seneca Street, Buffalo, New York, where 4 Star Resolution, Profile Management, and Fourstar Revenue Management conducted business, and where many of the unlawful debt collection practices described in this Complaint occurred.

18.     At times material to this Complaint, acting alone or in concert with others, Thomas has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint. Thomas resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19.     Defendant Maurice Sessum ("Sessum") is or has been a principal, owner, manager, and/or officer of some or all of the Corporate Defendants, including 4 Star Resolution, Profile Management, International Recovery Service, and Check Fraud Service. Sessum formed Check Fraud Service with Thomas. Sessum is or has been a signatory on deposit and/or

5

checking accounts for 4 Star Resolution, Profile Management, and International Recovery Service at Bank of America and RBS Citizens. In addition, he is or has been on the payroll of 4 Star Resolution, Profile Management, International Recovery Service, and Check Fraud Service, and received payments from Merchant Recovery Service. Sessum shares or has shared an office with Thomas at 1839 Seneca Street, Buffalo, New York, where 4 Star Resolution, Profile Management, and Fourstar Revenue Management conducted business, and where many of the unlawful debt collection practices described in this Complaint occurred.

20.     At times material to this Complaint, acting alone or in concert with others, Sessum has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint. Sessum resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

21.     Defendant Charles Blakely III ("Blakely") is or has been a principal, owner, manager, and/or officer of one or more of the Corporate Defendants, including Merchant Recovery Service. He incorporated Merchant Recovery Service, is or has been a signatory for the deposit and/or checking accounts at Bank of America and Wells Fargo Bank, N.A. for Merchant Recovery Service, and is or has been on the payroll of Merchant Recovery Service.

22.     At times material to this Complaint, acting alone or in concert with others, Blakely has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Merchant Recovery Service, including the acts and practices set forth in this Complaint. In connection with the matters alleged herein, Blakely transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

23.     Corporate Defendants have operated as a common enterprise while engaging in the deceptive, unfair, and abusive acts and practices alleged below. Corporate Defendants, Thomas, Sessum, and Blakely (collectively, "Defendants") have conducted the business practices described below through an interrelated network of companies that have (i) maintained officers and employees in common; (ii) operated under common control; (iii) shared offices; and (iv) commingled funds.

24.     The Corporate Defendants share common officers and employees. The various Corporate Defendants' bank records, corporate filings, payroll records, and websites show a significant number of overlapping officers and employees. For example, Thomas is listed as CEO and President of 4 Star Resolution, an officer of Profile Management, Vice President of International Recovery Service, and Vice President of Merchant Recovery Service. In addition, Thomas is or was on the payrolls of 4 Star Resolution, Profile Management, International Recovery Service, and Check Fraud Service, and received payments from Merchant Recovery Service. Sessum is listed as an officer and manager of both Profile Management and International Recovery Service. In addition, Sessum is or was on the payrolls of 4 Star Resolution, Profile Management, International Recovery Service, and Check Fraud Service, and received payments from Merchant Recovery Service. 4 Star Resolution, Profile Management, and International Recovery Service have or had at least twenty-five employees in common. 4 Star Resolution, International Recovery Service, and Merchant Recovery Service all share or shared at least three employees. These three companies also had at least one employee in common with Profile Management. Merchant Recovery Service and Check Fraud Service also shared at least one employee.

7

25.     The Corporate Defendants are owned and controlled by the same individuals. Thomas is an owner of 4 Star Resolution, Profile Management, International Recovery Service, Check Fraud Service, and Merchant Recovery Service.  Sessum is an owner of 4 Star Resolution and International Recovery Service.  In addition, Thomas incorporated Check Solution Services and organized 4 Star Resolution and Fourstar Revenue Management.  Thomas and Sessum were also both incorporators of Check Fraud Service.

26.     Most of the Corporate Defendants share physical offices and virtual addresses. For example, 4 Star Resolution, Profile Management, and Fourstar Revenue Management have each conducted business at 1839 Seneca Street, Buffalo, New York, where Thomas and Sessum shared an office and where numerous violations set forth in this Complaint have occurred. Likewise, 4 Star Resolution, International Recovery Service, and Profile Management have conducted business at 3735 Genesee Street, Cheektowaga, New York, where numerous violations set forth in this Complaint have occurred.  Most of the Corporate Defendants have used shared mail drops or virtual offices, including Canadian addresses, as the business addresses they provide to consumers and Better Business Bureaus.

27.     The Corporate Defendants commingle their funds.  Profile Management received and processed consumer payments on behalf of International Recovery Service and Check Solutions Services.  Some consumers who paid Fourstar Revenue Management had their checks deposited into one of 4 Star Resolution's bank accounts.  The payroll setup fees for Merchant Recovery Service were waived by its payroll service, Paychex, which noted at that time that "this business is basically a child of Parent . . . Profile Management."  Bank records demonstrate multiple transfers of funds among the various corporate entities.

28.     Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Individual

8

Defendants Thomas, Sessum, and Blakely have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of one or more of these Corporate Defendants.

## COMMERCE

29.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' DECEPTIVE AND ABUSIVE COLLECTION PRACTICES

30.     Since at least 2009 and continuing thereafter, Defendants have used deceptive and abusive tactics to pressure consumers into making payments on purported debts. Defendants' core tactic has been to misrepresent that consumers have committed "bank fraud," "check fraud," or another unlawful act related to the debts. Defendants have then claimed that consumers will face dire consequences – including arrest and imprisonment – unless the charges of fraud are resolved by making an immediate payment on the alleged debt over the phone. Defendants have also failed to provide consumers with basic, truthful information about Defendants, and failed to provide consumers with statutorily-required disclosures and notices that would assist consumers in verifying and, where appropriate, challenging the alleged debts.

### Defendants Are Debt Collectors Engaging in Interstate Commerce

31.     Defendants are third-party debt collectors that purchase portfolios of alleged consumer payday loan and credit card debts, many of which are past the applicable legal statutes of limitations, and collect payments on their own behalf from consumers nationwide.

32.     Defendants attempt to collect debts by contacting consumers using instrumentalities of interstate commerce, including telephones, United States mail, and electronic mail.

## Defendants Use Deception and False Threats to Extract Money from Consumers

33.    Defendants perpetrate their collection scheme primarily by telephoning consumers and making a series of misrepresentations and threats to convince the consumers to pay the purported debts.

34.    Often, a consumer's initial communication from Defendants is in the form of a message left by Defendants' representatives on the consumer's voicemail or answering machine. A typical telephone message informs a consumer of "possible litigation pending" against the consumer and provides a case number.  The message further states that the consumer has 48 hours to resolve the issue and provides a phone number to call back and a code enabling the consumer to speak with a claims processor.  The message then warns that the failure to comply will result in a complaint "being formalized" with the consumer's residing county.

35.    When consumers call the telephone numbers contained in the phone messages, they are usually connected to Defendants' representatives, who will sometimes inform the consumers that they are delinquent on a payday loan or other debt.  In numerous instances, Defendants' representatives have falsely claimed that (i) they are attorneys, investigators, process servers, court officials, government agents, or criminal law enforcement officials, rather than debt collectors, and; (ii) they will arrest or imprison consumers, take legal action, garnish consumers' wages, and/or seize their property if the consumers do not pay the alleged debts.  In fact, Defendants are private parties and do not have the legal authority to have consumers arrested or imprisoned for the nonpayment of a private debt.  Further, in most instances when Defendants threatened consumers with legal action, no legal action was subsequently taken, and, on information and belief, Defendants did not intend to take any such legal action.  In many instances, the claimed debts are beyond the applicable statutes of limitation, which would make any such action unlawful.  In other cases, consumers are not obligated to pay the alleged payday

10

loan or other debt at issue because the purported debt was already paid, discharged in bankruptcy, or the consumer never incurred the alleged debt.

36.     In one typical example of Defendants' misconduct, Defendants' representative, employing the pseudonym "Detective Jeff Ramsay," left a recorded voicemail for a Washington State consumer in which he falsely asserted that he was seeking to serve a bench warrant on the consumer for "check fraud":

> Hello, this is Detective Jeff Ramsey. I am attempting to touch
> bases with [consumer] . . . . At this point, I have been mandated to
> reprocess documentation. I will be back out to your place of
> residence, [consumer], between the hours of 4:00 and 6:00 p.m.
> You are to have two forms of identification, no firearms or
> narcotics or loose animals on the premises. This is concerning
> allegations in correlation to check fraud. I have a (inaudible)
> affidavit concerning this. It appears to be a pending bench warrant
> as well. If you wish to actually place a stop order on the bench
> warrant, [consumer], you have to touch bases with the agency that
> has retained my services. That would be the NCFC, which is the
> National Check Fraud Center.

37.     On another occasion, Defendants' debt collectors told a consumer that her husband had committed check and money fraud and that legal action would be taken against the husband if the debt was not repaid within two days. On these calls, one of Defendant's representatives identified himself as "Investigator Kearns" and falsely claimed that he was employed by a government agency with its headquarters in Washington, D.C., but that the agency was prohibited from providing consumers with its precise location following the events of September 11, 2001. In order to underscore the potential adverse consequences from the consumer's failure to pay, Investigator Kearns falsely threatened the consumer that "It's the government you're messing with!"

38.     Often, when consumers ask for proof of the alleged debts, Defendants' representatives refuse to provide such proof, and, instead, tell consumers that they will receive

proof in court or when the debt is paid. Many consumers paid the alleged debts that Defendants purport to be collecting because they were afraid of the threatened repercussions of failing to pay, or because they wanted to stop the harassment by Defendants.

39.     Defendants have profited substantially from their unlawful and abusive conduct. Since January 2010, Defendants have collected more than $30 million from consumers for purported debts.

### Defendants Misrepresent Their Identities to Consumers

40.     The phone messages that Defendants' representatives leave for consumers generally do not identify that the call is being placed by or on behalf of Defendants, but instead provide an unregistered fictitious company name or fail to reference any company name. In addition, the messages fail to disclose that the call is coming from a debt collector who is attempting to collect a debt from the consumer, or that any information obtained from the consumer will be used for that purpose, as required by the FDCPA.

41.     Likewise, when consumers do speak with Defendants' representatives and ask for Defendants' name, Defendants' representatives most often do not identify themselves using their true corporate or limited liability company name. Instead, in numerous instances, Defendants' representatives have identified themselves with a variety of unregistered fictitious business names, including, but not limited to, American Asset Management, American Asset Recovery, Asset Retention Services, Check Services, Check Services International, CFS & Associates, Inc., Consumer Recovery Group, County Arbitration, LLC, County Check Services, Debt Resolution Services, District Restitution Services, Financial Mediation Group, Four Star Capital Services, Four Star Mediation Group, Four Star Resolution Services, LLC, FS Mediation Group, Global Management Group, Hansen Law Firm, IRG & Associates, Mandatory Arbitration Services,

PDL Recovery Services, PMI & Associates, PMR Law Group, and Profile Arbitration Enforcement.

42.     In addition to using fictitious company names, Defendants use spoofed phone numbers, and the addresses of virtual offices and remote mailboxes in the United States and Canada in an apparent effort to avoid detection and facilitate their unlawful practices.

### Defendants Fail to Provide Statutorily-Required Notices and Disclosures

43.     Pursuant to Section 809(a) of the FDCPA, a debt collector must provide to consumers in its initial communication, or within five days after that initial communication, a written notice setting forth certain specifically defined information about the debt, including a statement that unless the consumer disputes the validity of the debt within thirty days after receipt of the notice, the debt will be assumed to be valid by the debt collector.  15 U.S.C. § 1692g.  Defendants frequently fail to provide such statutorily-required written notice.

44.     In those instances when Defendants do send a validation notice to consumers, the required disclosures are in small print, and other statements contained in the notice, such as threats of legal action within the thirty-day validation period, often overshadow the mandatory FDCPA disclosure language.

### Defendants Use Abusive and Profane Language When Speaking with Consumers

45.     During their collection calls, Defendants often use profane language or language the natural consequence of which is to abuse the hearer, such as calling the consumer a "f_cking no good liar," "idiot," "dummy," "piece of scum," "thief," "dirtbag," "scumbag," or "loser."

### Unlawful Disclosure of Information to Third Parties

46.     In numerous instances, Defendants have contacted third parties, including friends, family members, or employers of putative debtors.  In many instances, Defendants have

disclosed information about a purported debt to these third parties prior to obtaining a final judgment against the putative debtor.

47.     In some instances, Defendants have told third parties that putative debtors have committed "bank fraud," "check fraud," or "identity theft," and that putative debtors were going to be arrested or imprisoned if a debt is not paid.

48.     For example, Defendants' representatives repeatedly called both the legal department and human resources department of a Texas consumer's employer, claiming that the Defendants intended to serve legal papers on the consumer. On another occasion, Defendants' representative called a friend of a Tennessee consumer about the consumer's debt. The representative identified himself as a private investigator and claimed that a sheriff would be visiting the friend's house because the consumer had committed "identity theft" by using the friend's information to write a "bad check."

## VIOLATIONS OF THE FTC ACT

49.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

50.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act

## COUNT I

### False or Unsubstantiated Representations

### (By Plaintiff FTC Against All Defendants)

51.     In numerous instances, in connection with the collection of alleged consumer debts, Defendants have represented, directly or indirectly, expressly or by implication, that:

14

(a) Defendants' debt collector is an investigator, officer of the court, affiliated with a police or sheriff's department, or is working in coordination with a law enforcement agency;

(b) The consumer has committed "bank fraud," "check fraud," or another criminal act;

(c) Nonpayment of an alleged debt will result in the consumer's arrest, imprisonment, or in the seizure, garnishment of the consumer's property or wages;

(d) Defendants' debt collector is a process server, or is working with a process server, and is seeking to serve the consumer with legal papers pertaining to a lawsuit against the consumer;

(e) Defendants' debt collector is a lawyer, employed by a lawyer, or working with a lawyer who has reviewed the consumer's case and is preparing a lawsuit against the consumer; and

(f) Defendants have filed, or intend to file imminently, a lawsuit against the consumer.

52.   In truth and in fact, in all or numerous instances in which Defendants have made the representations set forth in Paragraph 51 of this Complaint:

(a) Defendants' debt collector is not an investigator or officer of the court, is not affiliated with a police or sheriff's department, and is not working in coordination with a law enforcement agency;

(b) The consumer has not committed "bank fraud," "check fraud," or another criminal act;

(c) Nonpayment of an alleged debt will not result in the consumer's arrest, imprisonment, or in the seizure, or garnishment of the consumer's property or wages;

(d) Defendants' debt collector is not a process server, is not working with a process server, and is not seeking to serve the consumer with legal papers pertaining to a lawsuit against the consumer;

(e) Defendants' debt collector is not a lawyer, is not employed by a lawyer, and is not working with a lawyer who has reviewed the consumer's case and is preparing a lawsuit against the consumer; and

(f) Defendants have not filed, and, upon information and belief, do not intend to file imminently, a lawsuit against the consumer.

53.    Therefore, Defendants' representations as set forth in Paragraph 51 of this Complaint are false or misleading and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE FDCPA

54.    In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Section 814 of the FDCPA, 15 U.S.C. § 1692*l*, provides that a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.

55.    Defendants are "debt collectors" as defined by Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

56.    A "consumer," as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), "means any natural person obligated or allegedly obligated to pay any debt."

16

57.    A "debt," as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5), "means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

58.    "Location information" as defined in Section 803(7) of the FDCPA, 15 U.S.C. § 1692a(7), means "a consumer's place of abode and his telephone number at such place, or his place of employment."

## COUNT II

### Prohibited Communications with Third Parties

### (By Plaintiff FTC Against All Defendants)

59.    Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b), prohibits a debt collector, without either the prior consent of the consumer, the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, from communicating in connection with the collection of a debt with any person other than the consumer (defined to include the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator), the consumer's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector for any purpose other than acquiring location information.

60.    In numerous instances, Defendants have violated Section 805(b) of the FDCPA by communicating in connection with the collection of debts with third parties other than those covered by the limited exceptions set forth in paragraph 59 of the Complaint.

17

## COUNT III

### Harassing Conduct

### (By Plaintiff FTC Against All Defendants)

61.     Section 806 of the FDCPA, 15 U.S.C. § 1692d, prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, including by the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader (Section 806(2) of the FDCPA, 15 U.S.C. § 1692d(2)).

62.     In numerous instances, Defendants have violated Section 806 of the FDCPA by using obscene or profane language in connection with the collection of debts.

## COUNT IV

### False, Deceptive, or Misleading Representations to Consumers

### (By Plaintiff FTC Against All Defendants)

63.     Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using any false, deceptive, or misleading misrepresentation or means in connection with the collection of a debt, including

(a) falsely representing or implying that the debt collector is vouched for or affiliated with the United States, any State, or County, such as claiming to be an officer of the court, affiliated with a police or sheriff's department, or working in connection with prosecuting attorneys' offices (Section 807(1) of the FDCPA, 15 U.S.C. § 1692e(1));

(b) falsely representing the character, amount, or legal status of any debt (Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A));

18

(c) falsely representing that any individual is an attorney or that any communication is from an attorney (Section 807(3) of the FDCPA, 15 U.S.C.§ 1692e(3));

(d) falsely representing or implying that nonpayment of a debt will result in the arrest or imprisonment of a person or the seizure or garnishment of any property or wages of any person, when such action is not lawful or when the debt collector has no intention of taking such action (Section 807(4) of the FDCPA, 15 U.S.C.§ 1692e(4));

(e) threatening to take action that is not lawful or that the debt collector does not intend to take, such as filing a lawsuit, including a lawsuit on claims that are outside of the statute of limitations (Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5));

(f) falsely representing or implying that a person committed a crime or other conduct in order to disgrace the person (Section 807(7) of the FDCPA, 15 U.S.C. § 1692e(7));

(g) failing to disclose in the initial communication with a consumer that the debt collector is attempting to collect a debt and that any information obtained by the debt collector will be used for the purpose of attempting to collect a debt, and in all subsequent communications that the communication is from a debt collector (Section 807(11) of the FDCPA, 15 U.S.C. § 1692e(11));

(h) using a business, company, or organization name other than the true name of the debt collector's business, company, or organization (Section 807(14) of the FDCPA, 15 U.S.C. § 1692e(14)); and

(i) using a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10)).

64.     In numerous instances, Defendants have violated Section 807 of the FDCPA by using false, deceptive, or misleading misrepresentations or means in connection with the collection of debts, or by failing to make statutorily-required disclosures.

## COUNT V

### Failure to Provide a Validation Notice

### (By Plaintiff FTC Against All Defendants)

65.     Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a), requires a debt collector to send consumers, either within the initial communication with consumers or within five days after the initial communication, a written notice containing: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

66.     In numerous instances, Defendants have violated Section 809(a) of the FDCPA by failing to send consumers a notice containing the information set forth in paragraph 65 of the

20

Complaint or by including statements in the notice that obscured the required FDCPA disclosure language.

## VIOLATIONS OF NEW YORK STATE LAW

### COUNT VI

### Repeated Fraudulent or Illegal Acts

### (By Plaintiff State of New York Against All Defendants)

67.     New York Executive Law § 63(12) empowers the Attorney General to seek restitution and injunctive relief when any person or business entity has engaged in repeated fraudulent or illegal acts or otherwise demonstrates persistent fraud or illegality in the carrying on, conducting, or transaction of business.

68.     Defendants have engaged in repeated fraudulent or illegal acts or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting, or transaction of their debt collection business for purposes of Executive Law § 63(12).

### COUNT VII

### Deceptive Acts or Practices

### (By Plaintiff State of New York Against All Defendants)

69.     New York General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business [...] in this state are hereby declared unlawful."

70.     In numerous instances, Defendants have violated New York General Business Law § 349 by engaging in deceptive acts or practices in connection with conducting their debt collection business.

## COUNT VIII

### Violation of New York State Debt Collection Law

### (By Plaintiff State of New York Against All Defendants)

71.    New York General Business Law § 601 sets forth a list of prohibited debt collection practices, including:

(a) Communicating or threatening to communicate the nature of a claim to the debtor's employer prior to obtaining final judgment against the debtor (N.Y. Gen. Bus. Law § 601(4));

(b) Threatening any action which the debt collector in the usual course of its business did not in fact take (N.Y. Gen. Bus. Law § 601(7)); and

(c) Claiming, or attempting or threatening to enforce a right with knowledge or reason to know that the right does not exist (N.Y. Gen. Bus. Law § 601(8)).

72.    In numerous instances, Defendants have violated New York General Business Law § 601 by engaging in prohibited debt collection practices under that statute.

## COUNT IX

### Violation of Assurance of Discontinuance

### (By Plaintiff State of New York Against Defendant Thomas)

73.    An Assurance of Discontinuance is an agreement to settle an investigation permitted by New York Executive Law § 63(15) in lieu of the OAG filing a civil action or proceeding against the target of the investigation.  On February 4, 2013, Defendant Thomas executed an Assurance of Discontinuance with the OAG related to the unlawful debt collection practices of a corporation owned and controlled by Thomas, which has since been dissolved pursuant to the Assurance of Discontinuance.

22

74.     Paragraph 18 of the Assurance of Discontinuance requires that "for a period of three (3) years following the date of execution of this Assurance, in the event that [Travell] Thomas changes a principal place of business, incorporates a new corporation or business entity, does business under a new name, (collectively, "Change in Business"), he shall inform the OAG in writing within thirty (30) days after any such Change in Business."

75.     On or around March 31, 2014, Defendant Thomas filed with the New York Department of State Articles of Organization creating Fourstar Revenue Management LLC.

76.     Defendant Thomas did not inform the OAG in writing of this Change in Business as required by Paragraph 18 of the Assurance of Discontinuance.

77.     By reason of the foregoing, Defendant Thomas has breached his agreement with the OAG as set forth in the Assurance of Discontinuance.

## CONSUMER INJURY

78.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the FDCPA, New York Executive Law § 63(12), and New York General Business Law Articles 22-A and 29-H.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

79.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the

23

disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

80.    New York Executive Law § 63(12) empowers the Attorney General to seek injunctive relief, restitution, damages, disgorgement, and other relief when any person or business entity has engaged in repeated fraudulent or illegal acts, or has otherwise demonstrated persistent fraud or illegality in the carrying on, conducting, or transaction of business.  New York General Business Law § 349 prohibits deceptive business practices and empowers the Attorney General to seek injunctive relief, restitution, and civil penalties when violations occur.  General Business Law Article 29-H, § 602 empowers the Attorney General to bring an action to restrain any violation of Article 29-H, New York's Debt Collection Procedures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs FTC and the State of New York, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), New York Executive Law § 63(12), and New York General Business Law §§ 349, 350-d, and 602(2), and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B.    Enter a permanent injunction to prevent future violations of the FTC Act, the FDCPA, New York General Business Law Articles 22-A and 29-H, and New York Executive Law § 63(12), by Defendants;

24

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the FDCPA, New York General Business Law Articles 22-A and 29-H, and New York Executive Law § 63(12), including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.    Pursuant to New York General Business Law § 350-d, impose a civil penalty of $5,000 for each violation of New York General Business Law Article 22-A; and

E.    Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: February 8, 2015

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

ROBIN E. EICHEN
KAREN DAHLBERG
BRIAN N. LASKY
Federal Trade Commission
One Bowling Green, Suite 318
New York, NY 10004
Telephone: 212-607-2803 (Eichen)
Telephone: 212-607-2821 (Dahlberg)
Telephone: 212-607-2814 (Lasky)
Facsimile: 212-607-2822
Email: reichen@ftc.gov
Email: kdahlberg@ftc.gov
Email: blasky@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

25

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

JAMES M. MORRISSEY
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Telephone: (716) 853-8471
Facsimile:  (716) 853-8414
Email:  james.morrissey@ag.ny.gov
*Attorney for Plaintiff State of New York*