UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION and PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,

       Plaintiffs,
 v.

**DECISION AND ORDER**
15-CV-112S

4 STAR RESOLUTION, LLC, et al.

       Defendants.

## I. INTRODUCTION

Plaintiffs, the Federal Trade Commission and the New York State Attorney General, commenced this action under Section 13(b) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 53(b); Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692l; New York Executive Law § 63(12); and New York General Business Law Article 22-A, § 349, and Article 29-H, § 602, for Defendants' alleged abusive and deceptive debt collection practices. Plaintiffs seek, among other things, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

In the Complaint, Plaintiffs allege that Defendants, in their efforts to collect on debts, are jointly and severally liable for: (1) making false representations to consumers[1] regarding Defendants' identities and business purposes, including stating that they are calling from or on behalf of law enforcement or law firm; (2) making

---

[1] As defined in the FDCPA, and as used in Plaintiffs' pleadings, "consumer" refers to a "person obligated or allegedly obligated to pay any debt." (Compl ¶ 56); 15 U.S.C. § 1692a(3).

1

unlawful contact with third parties (such as family, friends, and employers) and disclosing information, including false information such as impending legal action, about the purported debt; (3) harassing and/or abusing consumers by using obscene or profane language; (4) falsely threatening debtors with arrest on criminal charges, the filing of a civil suit, or similar consequences for non-payment; and (4) failing to provide consumers with statutorily required information. The State of New York also claims that Defendant Thomas violated an Assurance of Discontinuance executed in February 2013.

On May 22, 2015, the parties filed, and this Court subsequently so-ordered, a Stipulated Preliminary Injunction Order which substantially replicated the provisions of the temporary restraining order ("TRO") granted by this Court on February 10, 2015, with the exception of those sections (II and III) of the TRO that imposed an asset freeze with respect to both the individual and corporate Defendants. (Docket Nos. 115, 120.) Presently before this Court are Plaintiffs' motions to strike several of Defendants' asserted affirmative defenses (Docket No. 114) and for a continuation of the asset freeze as part of the preliminary injunction. (Docket No. 176.)

## II. DISCUSSION

### A.   Motion to Strike Affirmative Defenses

Plaintiffs move pursuant to Federal Rule of Civil Procedure 12(f) to strike Defendants' affirmative defenses of unclean hands, laches, estoppel, waiver, the failure to join necessary parties, and the right to counsel. (Docket No. 114; see Docket Nos. 106 (Answer on behalf of Maurice Sessum); 107 (Answer on behalf of the Thomas

Defendants[2]); 109 (Answer on behalf of the Blakely Defendants[3]).) The Blakely Defendants do not oppose Plaintiffs' motion with respect to these affirmative defenses. (Docket No. 184 at 1-2.) These Defendants do, however, dispute Plaintiffs' assertion that the statute of limitation defense must be struck with respect to the federal claims asserted under the FTCA and the FDCPA. (Id. at 2-3.)

To that end, Plaintiffs are correct that, absent a statutory provision clearly and expressly imposing one, an action on behalf of the United States in its governmental capacity is not subject to a statute of limitation. S.E.C. v. Lorin, 869 F.Supp. 1117, 1127 (S.D.N.Y. 1994) (citing E.I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S. Ct. 364, 68 L. Ed. 788 (1924)); see United States v. Summerlin, 310 U.S. 414, 416, 60 S. Ct. 1019, 84 L. Ed. 1283 (1940); Capozzi v. United States, 980 F.2d 872, 875 (2d Cir. 1992). The Blakely Defendants' reliance on DelCostello v. Int'l Bhd. of Teamsters in opposition to this general rule is unwarranted here. See DelCostello, 462 U.S. 151, 158-59, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983) (cited in F.T.C. v. Centro Natural Corp., No. 14-23879-CIV, 2014 WL 7525697, *7 (S.D. Fla. Dec. 10, 2014)). Although DelCostello stands for the proposition that where no applicable statute of limitations is found in federal civil law, an analogous suitable statute may be borrowed. The actions at issue in that case were brought by individual employees against their employers and unions, not by the United States Government. DelCostello, 462 U.S. at 154; see Lorin, 869 F. Supp. at 1127 (the United States is generally exempt in accordance with the

---

[2] The "Thomas Defendants" include individual Defendant Travell Thomas and all of the Corporate Defendants except Merchant Recovery Service.
[3] The Blakely Defendants include individual Defendant Charles Blakely III and Corporate Defendant Merchant Recovery Service ("MRS").

3

common law doctrine *nullum tempus occurrit regi*, or "time does not run against the king").

Further, Plaintiffs have established that no statute of limitations has been expressly enacted with respect to the causes of action at issue. Plaintiffs' federal claims seeking injunctive and equitable monetary relief for violations of the FTCA and the FDCPA are brought pursuant to Section 13(b) of the FTC.  See 15 U.S.C. § 53(b); § 1692l(a) (providing that the violations of the FDCPA may be treated as violations of the FTCA for purposes of enforcement by the FTC). Courts have recognized that, unlike actions brought by individual consumers, no statute of limitations applies to FTC enforcement actions.   F.T.C. v. Instant Response Sys., LLC, No. 13 Civ. 00976 (ILG)(VMS), 2014 WL 558688, *3 (E.D.N.Y. Feb. 11, 2014) (collecting cases); see also F.T.C. v. Dalby, No. 11-cv-1396-RBJ-KLM, 2012 WL 1694602, *2-3 (D. Colo. May 15, 2012); United States v. Building Inspector of Am., 894 F. Supp. 507, 513-14 (D. Mass. 1995).

Plaintiffs' motion to strike the Blakely Defendants' affirmative defenses of unclean hands, laches, estoppel, waiver, failure to join necessary parties, and the right to counsel, and statute of limitations insofar as this last defense is asserted with respect to the FTCA and FDCPA claims is therefore granted.  Further, because the remaining Defendants failed to file any opposition, Plaintiffs' motion to strike is granted with respect to all Defendants.  See Barmore v. Aidala, 419 F. Supp. 2d 193, 201-02 (N.D.N.Y. 2005) (failure to oppose motion deemed consent to dismissal); Lipton v. Cnty. of Orange, NY, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (failure to oppose dismissal motion generally constituted abandonment of that claim).

**B.      Motion for a Continued Asset Freeze as Part of the Preliminary Injunction**

As noted above, Defendants have stipulated to a preliminary injunction continuing many of the TRO provisions previously granted by this Court. The parties dispute only the need for a continued asset freeze.

The standard for obtaining a preliminary injunction under the FTCA differs from that applicable to private applicants seeking such relief. See F.T.C. v. Crescent Publ'g Grp., Inc., 129 F. Supp. 2d 311, 319 (S.D.N.Y. 2001) (citing U.S. v. Sun and Sand Imports, Ltd., Inc., 725 F.2d 184, 188 (2d Cir. 1984)); see also F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1028-29 (7th Cir. 1988). Plaintiffs are entitled to a preliminary injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b). Under this public interest test, "private concerns may certainly be considered, [but] public equities must receive far greater weight." World Travel Vacation Brokers, Inc., 861 F.2d at 1029; F.T.C. v. Weyerhaeuser Co., 665 F.2d 1072, 1083 (D.C. Cir. 1981) ("When the Commission demonstrates a likelihood of ultimate success, a countershowing of private equities alone would not suffice to justify denial of a preliminary injunction."); see also Crescent Publ'g Grp., Inc., 129 F. Supp. 2d at 319; F.T.C. v. Phoenix Avatar, LLC, No. 04 C 2897, 2004 WL 1746698, *8 (N.D. Ill. July 30, 2004).  Thus, the FTC does not have to show irreparable harm, but instead a court should: (1) determine whether the FTC has a fair and tenable chance of ultimate success on the merits; and (2) consider the equities of imposing

injunctive relief. Crescent Publ'g Grp., Inc., 129 F. Supp. 2d at 319; see also People v. Apple Health & Sports Clubs, 174 A.D.2d 438, 571 N.Y.S.2d 23 (N.Y.A.D. 1st Dep't 1991) (applying similar standard in special proceeding pursuant to N.Y. Executive Law § 63), *aff'd* 80 N.Y.2d 803 (1992).

1. Exclusion of Consumer Declarations

In considering Plaintiffs' motion, the Thomas Defendants argue that this Court should disregard the consumer declarations submitted in support of the TRO and incorporated by reference into Plaintiffs' present submissions. (Thomas Mem in Opp'n at 10-11, Docket No. 194; see Pls' Mem of Law at 7-8, Docket Nos. 177, 183[4].) Specifically, the Thomas Defendants assert that these declarations appear to have been prepared by FTC agents and not the consumers themselves. Although the declarations are similar in format, they do not contain rote repetitions of general allegations, but each declaration reflects a consumer's relevant experience with an improper debt collection or attempted collection. Many of the declarations are also supported by transcripts and/or letters received by the consumer. Further, contrary to Defendants' argument, aspects of the consumer declarations are corroborated by evidence found elsewhere in the record, supporting a connection between one or more of the Defendants and the improper activity. (See e.g. Docket Nos. 4-4, 4-14, 4-28, 178-11 at 4, 182 at 82 (use of the Global Management Group corporate alias); Docket Nos. 8 at 97, 10 at 11, 182 at 15, 21 (improper calls from "Don Mack"); Docket Nos. 4-15, 8 at 88, 178-2 at 8 (use of District Restitution corporate alias).)

---

[4] Because the supporting memorandum referenced information subject to a protective order, Plaintiffs filed a public redacted copy as well as a sealed, unredacted copy.

The Blakely and Thomas Defendants[5] nonetheless argue that the allegations in these declarations have not been subject to cross-examination. However, "[t]he Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.' " Mullins v. City of New York, 626 F.3d 47, 51-52 (2d Cir. 2010) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)). Indeed, in light of the summary nature of this remedy, courts are permitted to consider hearsay and otherwise inadmissible evidence at the preliminary injunction stage. Mullins, 626 F.3d at 52. The consumer declarations are therefore appropriately considered on a preliminary injunction motion. Mullins, 626 F.3d at 52; see Davis v. N.Y.C. Hous. Auth., 166 F.3d 432, 437-38 (2d Cir. 1999).

Finally, because Defendants neither expressly discuss nor dispute the factual assertions in the consumer declarations, or any other piece of specific evidence cited by Plaintiffs, resolution of this motion on the parties' submissions will not be the result of an improper 'battle of the affidavits.' See Davis, 166 F.3d at 437-38 (where affidavits evince disputed issues of fact, an evidentiary hearing is preferred); see F.T.C. v. Vantage Point Servs., No. 15-CV-006S, 2015 WL 2354473, *3 (May 15, 2015).

    2.    Common Enterprise

Plaintiffs are proceeding against Defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." F.T.C. v Tax Club, Inc., 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists,

---

[5] Defendant Sessum did not file any opposition to Plaintiffs' motion.

7

courts consider "the pattern and framework of the whole enterprise." Delaware Watch Co. v. F.T.C., 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." Tax Club, Inc., 994 F. Supp. 2d at 469 (citation omitted); F.T.C. v. Consumer Health Benefits Ass'n, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011).  Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. F.T.C. v Wyndham Worldwide Corp., No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing F.T.C. v. Direct Benefits Grp., No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

   Initially, Defendants Thomas and Sessum have either organized, owned, managed or held themselves out as an owner, officer, or manager of each of the Corporate Defendants, including MRS. (Docket Nos. 15 at 1, 3, 5-7, 11, 17, 24; 16 at 5-7, 19-22; 17 at 1-2, 5-15, 22; 18 at 1; 178-7 at 14.)   Although Defendant Blakely appears to be an officer/owner of only the North Carolina-based MRS, Defendants Thomas and Sessum additionally appear as signatories on what was denominated as MRS' payroll account, and Thomas has issued checks from MRS' operating account. (Docket Nos. 16 at 5-7; 178-7 at 2.)   Further Defendant Sessum signed a five-year lease agreement for a North Carolina space as C.E.O. on behalf of "Profile Management, Inc., DBA Merchant Recovery Services." (Docket No. 178-7 at 5-14.)

Defendant Blakely does not dispute the involvement of the other Defendants in MRS.  He admits that he "accepted assistance from one or more of the other defendants in this case to launch and operate MRS," but asserts that when he "came to understand that those parties allowed and/or condoned practices which I would not allow or permit, . . . [he] endeavored to distance from the involvement and influence of the other defendants." (Blakely Aff ¶¶ 5-8, Docket No. 193.) He then clarifies, however, that he did not become "better informed about the best lawful practices under the Fair Debt Collection Practices Act" until February 2015, the month the TRO was served. (Blakely Aff ¶¶ 8-10 (similarly asserting that Thomas was no longer an account signatory "[a]s of February 2015").)  Blakely's affidavit therefore does not create an issue of fact regarding the relationship between MRS and the individual and corporate Defendants during the years prior to the service of the TRO in February 2015.

The Corporate Defendants also share employees in common, with there being extensive overlap between Defendants 4 Star Resolution, International Recovery Services, and Profile Management. (Docket No. 13 at 5-8.)  Notably, even the North Carolina based MRS shared five employees with the other Buffalo based entities, (Id.), a fact significant even if these individuals were employed by the Corporate Defendants at different times. (see Blakely Defs Mem in Opp'n at 3.)  Documents and computer files recovered from each of the premises indicate that multiple copies of identical or almost identical improper scripts were used at each of the corporate locations. (Docket No. 178 ¶¶ 23-28.)  A MRS presentation recovered from the North Carolina location indicates that this Defendant is a "Member of the Four Star Resolution Family of Companies" and lists Defendant Thomas as CEO/CFO with Defendant Blakely as the collection

manager. (Docket Nos. 178 ¶ 21, 178-5 at 2, 5 (capitalization altered).) Further, over $11,000,000 was transferred between the Corporate Defendants between 2010 and 2014, including over $400,000 from PMI to MRS and over $45,000 from MRS to other Corporate Defendants. (Docket No. 12-2 ¶¶ 11, 17, 20-21.)

In short, after considering the "pattern and frame-work of the whole enterprise," this record supports the conclusion that the entities at issue operated as a "maze of interrelated companies." Delaware Watch Co., 332 F.2d at 746. Plaintiffs have therefore established they have a fair and tenable chance of proving Defendants operated as a common enterprise. Crescent Publ'g Grp., Inc., 129 F. Supp. 2d at 319.

   3.   Individual Liability

"Individual defendants may be liable for corporate acts or practices if they (1) participated in the acts or had authority to control the corporate defendant and (2) knew of the acts or practices." F.T.C. v. Medical Billers Network, Inc., 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008) (citing F.T.C. v. Amy Travel Serv., 875 F.2d 564, 573 (7th Cir. 1989), *cert denied*, 493 U.S. 954 (1989)). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." Amy Travel Serv., 875 F.2d at 573; Medical Billers Network, Inc., 543 F. Supp. 2d at 320. The "knowledge requirement may be fulfilled by showing that the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." Amy Travel, 875 F.2d at 574 (internal quotation marks omitted).

Defendants do not dispute that the individual defendants here have the authority to control one or more of the Corporate Defendants, as evidenced by, among other things, bank signatory cards and incorporation or other filings, as noted above. See Tax Club, Inc., 994 F. Supp. 2d at 471-73; see also F.T.C. v. Five-Star Auto Club, 97 F. Supp. 2d 502, 538 (S.D.N.Y. 2000) (individual's assumption of officer role and possession of authority to sign documents on behalf of the corporation demonstrate the requisite control over the corporation to be held liable under the FTCA).

With respect to the knowledge requirement, the prevalence of the scripts and notices by management throughout the corporate premises detailing conduct prohibited by the FTCA, FDCPA, and New York state law evinces, at minimum, an "awareness of a high probability of fraud along with an intentional avoidance of the truth." Amy Travel, 875 F.2d at 574. These scripts and memos were also found in the offices or on the computers of each of the individual Defendants. (Docket No. 178 ¶¶ 29-38; see e.g. Docket No. 178-11 at 2-11, 14-15; 178-12 at 3; 178-13 at 1-3, 178-16 at 4-5, 19-20.) Copies of lawsuits and other complaints found in their individual offices would have alerted Defendants that their companies' collection practices were being called into question, thereby prompting the need to investigate the possibility of fraud. (See Docket No. 178-12 at 4-14; 178-13 at 10-15; 178-14 at 1-12; 178-15 at 1-18; 178-16 at 7-18, 22-28.) A memo located in one of the Buffalo locations states that "by order of Travell Thomas Owner of Four Star Revenue Management" all employees were to identify themselves on the phone as only professional recovery consultants, (Docket No. 178-3 at 3), as opposed to debt collectors. A memo obtained from Defendant Sessum's computer detailed a plan to "legitimize the name" Revenue Recovery Service by, among

other things, "[e]stablish[ing] an off site partnership for profitable staff that are far to rogue to become compliant[, i.]e. 'Little Seneca.' " (Docket Nos. 178 ¶ 37, 178-16 at 2-3; see Docket No. 180 ¶ 5(b) (referencing the 1839 Seneca Street, Buffalo, corporate location as "Little Seneca"). After considering the evidence presented by Plaintiffs as a whole, this Court finds that they have established a fair and tenable chance of establishing that the individual Defendants had either actual knowledge of or an awareness of a high probability of the misconduct alleged in the Complaint. See Amy Travel, 875 F.2d at 574

    4.    Likelihood of Success on the Merits

Briefly, because Defendants also raise no specific argument in opposition on this point, Plaintiffs have submitted evidence supporting the conclusion that they have a fair and tenable chance of succeeding on each of their claims. Specifically, the consumer declarations, scripts, and recovered call recordings tend to establish the following conduct is attributable to Defendants' common enterprise: (1) making false representations to consumers regarding Defendants' identities, location and business purposes, including stating that their calling from or on behalf of a law firm or government agency (see e.g. Docket Nos. 4-3, 4-4, 4-8, 4-10, 4-17, 4-24, 4-26, 4-28, 9, 10 at 1, 10 at 22 (consumer declarations)); (2) threatening debtors with arrest on criminal charges, the filing of a civil suit, wage garnishment or similar consequences for non-payment (see e.g. Docket Nos. 4-5, 4-6, 4-9, 4-16, 4-17, 4-20, 4-23, 4-31, 9, 10 at 11, (consumer declarations)); (3) making unlawful contact with third parties (such as family, friends, and employers) regarding the purported debt (see e.g. Docket Nos. 4-13, 4-18, 4-23, 4-26, 4-28 (consumer declarations)); (4) harassing or abusing

consumers by using obscene or profane language in connection with the collection of debts (see e.g. Docket Nos. 4-15, 4-22, 8 at 97, 8 at 100, 10 at 9, 10 at 34 (consumer declarations)); and (5) failing to provide consumers with statutorily required information (see e.g. Docket Nos. 4-27, 4-28, 10 at 1, 10 at 34 (consumer declarations); see generally Docket Nos. 4-1, 4-2 (former employee declarations); Docket No. 182 (summary and transcripts of selection of call recordings)).

    5.    Balance of Equities

A district court has the authority to order "ancillary relief necessary to accomplish complete justice" under Section 13(b) of the FTCA. F.T.C. v. Verity Int'l, No. 00 CIV. 7422(LAK), 2002 WL 44126, *2 (S.D.N.Y. Jan. 11, 2002) (quoting F.T.C. v. H.N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir.1982).) Accordingly, injunctive relief is appropriate to prevent the dissipation of assets necessary to assure that a court has the ability to fashion the appropriate relief for consumers. See Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1347 (2d Cir. 1974), *cert denied*, 417 U.S. 932 (1974); see also F.T.C. v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1434 (11th Cir. 1984).  Here, Plaintiffs assert that Defendants have coerced consumers into paying over $30,000,000 through the illegal use of threats, lies, and intimidation tactics. (See Docket No. 12-2 ¶ 10 (forensic accountant's analysis and opinion that $31,475,156.96 was credited to Corporate Defendant bank accounts from credit card processors, "indicating that they were payments from consumers").) Plaintiffs argue that, in light of the fact that the amount of the individual and Corporate Defendants frozen monetary assets is less than $1.2 million, an amount that will likely be further depleted by receivership fees and potential creditor claims, the continuation of the asset freeze as part of the preliminary injunction

is necessary in order to ensure that this Court retains some ability to fashion an appropriate remedy, including restitution to consumers, in the event of Plaintiffs' success on the merits. (Pls' Mem of Law at 28-29, Docket Nos. 177, 183.)

Defendants do not dispute that the potential amount of an equitable remedy award is approximately $30 million as calculated by Plaintiffs. Instead, the Blakely and Thomas Defendants assert that the assets of the Corporate Defendants include debt portfolios. (Blakely Defs Mem of Law at 11, Docket No. 192; Thomas Defs Mem of Law at 9, Docket No. 194.) Defendant Blakely avers that "MRS owned debt portfolios containing approximately 600,000 individual consumer debts totaling approximately $16 [m]illion dollars." (Docket No. 193 ¶ 15.) Defendant Thomas avers that several of the remaining Corporate Defendants "owned approximately $60,000,000.00 in debt portfolios." (Docket No. 194-1 ¶ 4.) Defendants argue that "[i]n the event Plaintiffs are successful in this action, those debtors will achieve a form of redress in that those accounts and the full balances owed by hundreds of thousands of debtors will effectively be forgiven and the debtors will not ever repay the balances owed." (Blakely Defs Mem of Law at 11; see Thomas Defs Mem of Law at 9 (parroting the same argument with respect to "millions of debtors".) No legal or logical basis is offered in support of the argument that, because other consumers may not have their debts collected, the amount of any equitable monetary redress due to those consumers whose debts were previously collected by Defendants through improper and illegal means should be diminished. In short, this perfunctory apples-and-oranges argument has no merit.

The value of the debt portfolios, assuming they are corporate assets,[6] would certainly be relevant to the Court's consideration of whether to release certain funds for the purpose of attorneys' fees and living expenses.  However, Defendants do not develop this argument along this line of thought, and they have not presented an alternative argument for the release of limited funds from the asset freeze.  Instead, Defendants take an all-or-nothing approach in their present opposition, asserting that the asset freeze should be lifted in order to allow payment of counsel for the purpose of effective representation. (Blakely Defs Mem of Law at 10; Thomas Defs Mem of Law at 9.)  Defendants are correct that it is certainly appropriate for this Court to consider these private equities in weighing whether to grant the continued asset freeze, however, under the FTCA, public equities must receive greater weight in the present analysis. see World Travel Vacation Brokers, Inc., 861 F.2d at 1029; see also Crescent Publ'g Grp., Inc., 129 F. Supp. 2d at 319.  In light of the fact that the continuation of the asset freeze will be imposed without prejudice to further specific, supported motions for the release of funds for attorneys' fees and living expenses, the balance of equities therefore weighs in favor of continuing the asset freeze as requested along with the stipulated provisions of the preliminary injunction.

### III.     CONCLUSION

Plaintiffs' motion to strike Defendants' affirmative defenses of unclean hands, laches, estoppel, waiver, failure to join necessary parties, and the right to counsel, and statute of limitations insofar as this last defense is asserted with respect to the FTCA

---

6 The Receiver previously acknowledged that debt portfolios were held by the Corporate Defendants, but he could not establish whether these assets were owned by Defendants or held on consignment. (See Docket No. 123 at 16.)

15

and FDCPA claims. Further, upon consideration of the parties' submissions, this Court concludes that Plaintiffs have a fair and tenable chance of ultimate success on the merits, and that the balance of equities favors imposing the injunctive relief requested. see Crescent Publ'g Grp., Inc., 129 F. Supp. 2d at 319.

## IV. ORDERS

IT HEREBY IS ORDERED that Plaintiffs' Motion to Strike Several of Defendants' Affirmative Defenses (Docket No. 114) is GRANTED;

FURTHER, that Plaintiffs' Motion for an Additional Preliminary Injunction Order Containing an Asset Freeze (Docket No. 176) is GRANTED and a signed copy of this order will be filed herewith.

SO ORDERED.

Dated: November 21, 2015
Buffalo, New York

                                                        /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                           United States District Judge