UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION and PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,

         Plaintiffs,
v.

4 STAR RESOULTION, LLC, et al.,

         Defendants.

**DECISION AND ORDER**
15-CV-112S

# I. INTRODUCTION

Currently pending before this Court are the Receiver's Motion to Enforce Stay Pursuant to Orders of the Court Dated February 10, 2015 and June 2, 2015 (Docket No. 229), the Receiver's Unopposed Third Motion for Attorney Fees and Reimbursement of Expenses (Docket No. 248), and Judgment Creditors Samantha Kollatz and Lisa Miller's Motion to Satisfy Judgments (Docket No. 253). For the following reasons, the Receiver's motions are granted;[1] Ms. Kollatz and Ms. Miller's motion is denied as moot.

# II. BACKGROUND

The Preliminary Injunction Order

On February 9, 2015, the Federal Trade Commission ("FTC") and the State of New York commenced this action against 4 Star Resolution LLC, Profile Management, Inc., International Recovery Service LLC, Check Solutions Services Inc., Check Fraud

---

[1] Plaintiffs in this action, the Federal Trade Commission and the State of New York, filed a motion for permission to file a memorandum of law in support of the Receiver's Motion to Enforce the Stay. (Docket No. 236.) Because of Plaintiffs' substantial interest in this matter, their motion is granted. Plaintiffs' Memorandum of Law (see Docket No. 236-1) was considered by this Court in resolving the motion to enforce the stay.

Service, LLC, Merchant Recovery Service, Inc., Fourstar Revenue Management LLC, Travell Thomas, Maurice Sessum, and Charles Blakely, III. On February 10, 2015, this Court granted an ex parte temporary restraining order (the "TRO") with an asset freeze, granting equitable relief and appointing Gary M. Graber as Receiver. (Docket No. 29.)

On May 22, 2015, the parties filed, and on June 2, 2015, this Court so-ordered, a Stipulated Preliminary Injunction Order (the "PI Order"), which substantially replicated the provisions of the TRO. (Docket Nos. 115, 120.) Section XIV of the PI Order prohibits, except by permission of the District Court, any action to enforce a claim against the Defendants, the Receiver, and the Receiver's agents. Specifically, the PI Order states the following:

> A. Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other Persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:
>
> 1. Commencing, prosecuting, continuing, entering or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations.

(Docket No. 115 at 23.)

The State Court Actions

In April and July 2015, Samantha Kollatz and Lisa Miller (the "Judgment Creditors"), both former employees of the Defendants, commenced sexual harassment suits in Erie County Supreme Court, naming multiple Defendants in their suits.[2] The

---

[2] The Judgment Creditors name as defendants: Profile Management, Inc., International Recovery Service, LLC d/b/a Financial Mediation Group, Four Star Resolution, LLC, and Travell Thomas, Individually and as Owner, Director, and CEO of Profile Management, Inc., International Recovery

Receiver was notified of these actions and sent a copy of the TRO to Willard M. Pottle, Jr., the Judgment Creditors' counsel, on July 24, 2015, informing the Judgment Creditors that their suits were stayed pursuant to this Court's order.  (See Docket No. 229-4.)  In August 2015, the Judgment Creditors sought, and were granted, default judgments in their sexual harassment suits, and the judgments were recorded by the Erie County Clerk's Office in the amount of $204,804.85 for Ms. Kollatz and $100,542.06 for Ms. Miller.  (See Docket No. 229-5.)

The Judgment Creditors' counsel does not dispute that he received the notice of stay sent by the Receiver, and the Judgment Creditors each filed a "creditor claim form" with the Receiver in August 2015, making claims against the Receivership Assets in the amount of the state court judgments.  (See Docket No. 229-6.)

In January and February 2016, Judgment Creditors' counsel served the Receiver with Information Subpoenas and Restraining Notices on behalf of the Judgment Creditors, seeking to enforce the judgments.  (See Docket Nos. 229-7, 229-9.)  The Receiver promptly answered Judgment Creditors' counsel, stating that he would not respond to the subpoenas and requesting that the Judgment Creditors vacate the judgments.  (See Docket Nos. 229-8, 229-10.)  The Judgment Creditors then filed a Motion for Contempt in state court against the Receiver.  (See Docket No. 229-11.)  The Receiver again notified Judgment Creditors' counsel of the stay enacted by this Court, again requested that the Judgment Creditors vacate the judgments, and asked that the motion for contempt be withdrawn.  (See Docket No. 229-12.)  The Judgment Creditors' counsel did not accede to the Receiver's requests, and the Receiver filed a motion seeking this Court's intervention.

---

Services, LLC and Four Star Resolution, LLC.

### III. DISCUSSION

**A.   Enforcement of the Stay**

The Supreme Court has recognized that among the inherent powers of a federal court is the authority, which is codified in the All Writs Act, "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. N.Y. Tel. Co., 434 U.S. 159, 172, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977) (citations omitted). Pursuant to this inherent power, a federal court may enjoin actions in other jurisdictions that would undermine its "ability to reach and resolve the merits of the federal suit before it." In re Baldwin-United Corporation, 770 F.2d 328, 338-39 (2d Cir. 1985). This power is not limited to other federal courts, it also extends to state court actions. S.E.C. v. Credit Bancorp., Ltd., 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000) (staying state court action and stating that "the power to stay competing actions falls within the court's inherent power to prevent interference with the administration of that estate"); see also In re Baldwin-United Corp., 770 F.2d at 338-39 (affirming district court's injunction, pursuant to All Writs Act, 28 U.S.C. § 1651, against suits in state courts).

Although the Second Circuit has not addressed a factually identical situation to the present case, it has cited approvingly to S.E.C. v. Wencke, 622 F.2d 1363 (9th Cir. 1980), in which the Ninth Circuit approved a district court's denial of a petition for relief from a blanket stay in order to enforce a state court judgment against assets held in a receivership. See S.E.C. v. Byers, 609 F.3d 87, 91 (2d Cir. 2010) (noting that "district courts may issue anti-litigation injunctions barring bankruptcy filings as part of their

4

broad equitable powers in the context of an SEC receivership" and "we join both the Ninth and Sixth Circuits, which also allow similar anti-litigation injunctions") (citing Wencke, 622 F.2d at 1369 ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action.")).  The Second Circuit in Byers also quoted the Sixth Circuit's opinion in Liberte Capital Group, LLC v. Capwill, 462 F.3d 543 (6th Cir. 2006), which states:

> Once assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets.  The receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets.  To this extent, the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained.  This power extends to the institution of any suit, and not just a proceeding for execution of a judgment against the receivership in the receivership court.  Because the court's power of injunction in a receivership proceeding arises from its power over the assets in question, non-parties to the underlying litigation may be bound by a blanket stay, so long as the non-parties have notice of the injunction.

Id. at 551-52 (internal citations and quotations omitted).

Although Wencke and Byers addressed actions involving the SEC, the power of a receivership court to prevent the commencement, prosecution, continuation, or enforcement of such actions has also been recognized specifically in the context of cases brought by the FTC.  See F.T.C. v. First Capital Consumer Membership Servs., Inc., 206 F.R.D. 358, 365 (W.D.N.Y. 2001) (finding that substantially similar stay provision prevented non-party from "from filing suit or from intervening in this suit" to seek receivership property); F.T.C. v. NHS Sys., Inc., 708 F. Supp. 2d 456, 471 (E.D.

Pa. 2009); F.T.C. v. Med Resorts Int'l, Inc., 199 F.R.D. 601, 608 (N.D. Ill. 2001); F.T.C. v. Connelly, No. SACV 06-701 DOC RNBX, 2007 WL 6492931, at *4 (C.D. Cal. Aug. 27, 2007).

The Judgment Creditors' do not attempt to engage in the relevant precedent or argue that they should be granted relief from the stay. Instead, their opposition to the Receiver's motion argues that the law does not apply.

1. The Anti-Injunction Act is Not Applicable

First, the Judgment Creditors argue that this Court has no jurisdiction to enjoin the state court actions under the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. "However, it is well-established that the Anti-Injunction Act does not apply when the United States or a federal agency such as [the FTC] seeks to stay a proceeding in state court." See U.S. Dep't of Hous. & Urban Dev. v. K. Capolino Const. Corp., No. 01 CIV. 390 (JGK), 2001 WL 487436, at *6 (S.D.N.Y. May 7, 2001) (citing Arkansas v. Farm Credit Svcs., 520 U.S. 821, 829, 117 S. Ct. 1776, 1781, 138 L. Ed. 2d 34 (1997); N. L. R. B. v. Nash-Finch Co., 404 U.S. 138, 146, 92 S. Ct. 373, 378, 30 L. Ed. 2d 328 (1971) ("The purpose of § 2283 was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights."); Leiter Minerals Inc. v. United States, 352 U.S. 220, 226, 77 S. Ct. 287, 291, 1 L. Ed. 2d 267 (1957) ("The frustration of superior federal interests that would ensue

6

from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of [the Anti-Injunction Act], would be so great that we cannot reasonably impute such a purpose to Congress . . . ."); S.E.C. v. Wencke, 577 F.2d 619, 623 (9th Cir. 1978) ("The district court had jurisdiction to enjoin the Nevada state court.  Title 28 U.S.C. § 2283, which prohibits federal injunctions of state court action in most circumstances, does not apply to injunctions issued at the request of the United States."); Marshall v. Chase Manhattan Bank, 558 F.2d 680, 683 (2d Cir. 1977) ("the general language of § 2283 was not intended to hamstring federal agencies in the utilization of federal courts to protect federal rights").

The primary purpose of establishing a receivership is to protect the estate property and ultimately return that property to the proper parties in interest.  See S.E.C. v. American Bd. of Trade Inc., 830 F.2d 431, 436 (2d Cir. 1987).  This Court issued the TRO and PI Order, which include a blanket litigation stay, at the request of a federal agency, to prevent interference with and dissipation of the receivership estate, and to further the interest of protecting consumers from abusive debt collection practices.  See Fair Debt Collection Protection Act, 15 U.S.C. § 1692.  Among the Receiver's duties is that of marshaling and preserving the assets of the estate in order to effectuate an orderly, efficient, and equitable administration of the estate.  See id.; In re Consolidated Welfare Fund "ERISA" Litigation, 798 F. Supp. 125, 128 (S.D.N.Y. 1992) (stay is akin to the automatic stay that applies in the bankruptcy context, 11 U.S.C. § 362, that protects the fund's assets during an interim period).  Such efforts would be "rendered meaningless" if third parties, such as the Judgment Creditors are permitted to obtain judgments against the estate and thereby deplete its assets.  In re Consolidated

Welfare Fund, 798 F. Supp. at 128. Accordingly, the Anti-Injunction Act is not applicable in the present case. Cutler v. 65 Sec. Plan, 831 F. Supp. 1008, 1014 (E.D.N.Y. 1993) ("The Anti-Injunction Act is not applicable where a federal agency requests a stay of state court proceedings.").[3]

2. This Court has Jurisdiction to Stay the Judgment Creditors' Actions

Second, the Judgment Creditors contend that this Court does not have jurisdiction over them because they are not parties to this action, and because they were not personally served with either the relevant stay orders or the Receiver's motion to enforce the stay.

As stated by the Second Circuit:

> An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction. The power to bind non-parties distinguishes injunctions issued under the Act from injunctions issued in situations in which the activities of the third parties do not interfere with the very conduct of the proceeding before the court.

In re Baldwin-United Corp., 770 F.2d at 338 (citations omitted). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." N.Y. Tel. Co., 434 U.S. at 174 (citations omitted).

To satisfy the requirements for binding a non-party under the All Writs Act, the

---

[3] The Judgment Creditors' attempt to cast the present action as *in personam* rather than *in rem*, and thereby distinguish overwhelming relevant case law, is mistaken. This Court appointed a receiver, froze assets, and stayed litigation through its power to grant equitable remedies. See F.T.C. v. Bronson Partners, LLC, 654 F.3d 359, 365 (2d Cir. 2011) ("the unqualified grant of statutory authority to issue an injunction under [S]ection 13(b) carries with it the full range of equitable remedies").

8

Judgment Creditors are entitled, at most, to "actual notice of the injunction and an opportunity to seek relief from it in the district court." See In re Baldwin, 770 F.2d at 340.[4] The Judgment Creditors do not argue that they did not receive actual notice of the stay. Indeed, the Receiver has presented persuasive evidence that the Judgment Creditors' counsel was served with this Court's stay order no later than July 24, 2015.[5] (See Docket No. 229-4.) The Judgment Creditors must also have been aware of the action and the receivership when they filed claims against the receivership assets in August 2015. (See Docket No. 229-6). In addition, the Judgment Creditors have had an opportunity to seek relief from the stay through the opposition they filed in response to the Receiver's motion to enforce the stay.[6]

Accordingly, it is within this Court's authority to bind the Judgment Creditors, and their jurisdictional argument fails.

3. The Judgment Creditors' Enforcement Action Depletes Receivership Assets

Finally, the Judgment Creditors' contend that they do not seek to deplete the receivership assets, and are requesting only an inventory of the receivership estate. This Court is not persuaded by their argument.

---

[4] Notice alone may be sufficient to bind the non-parties in this case, without the opportunity to contest the stay. See Wencke, 622 F.2d at 1371 (order staying proceedings against a court-imposed receivership "can be made effective against persons not parties" to the federal action upon a showing of mere "notice of the stay"); Byers, 609 F.3d at 91 (agreeing with Sixth Circuit that "'non-parties to the underlying litigation may be bound by a blanket stay, so long as the non-parties have notice of the injunction'") (quoting Liberte Capital Grp., LLC, 462 F.3d at 552). In any event, both conditions have been satisfied in this case.

[5] Service on the Judgment Creditors' counsel was not only appropriate in this case, it was required by the Federal Rules. Rule 5(b)(1) of the FRCP provides: "If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."

[6] Moreover, the Supreme Court has held that creditors bring themselves within the equitable jurisdiction of the court by filing claims against an estate in bankruptcy, a similar factual context. Langenkamp v. Culp, 498 U.S. 42, 44, 111 S. Ct. 330, 331, 112 L. Ed. 2d 343 (1990) ("Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court."). The Judgment Creditors offer no argument why this precedent does not apply in the present case.

The Judgment Creditors served information subpoenas and restraining notices on the Receiver in January and February 2016. (See Docket Nos. 229-7, 229-9.) The restraining notices, if enforced, would prevent the Receiver from utilizing the funds in the receivership accounts. "The fundamental purpose of establishing a Receivership is to protect the estate property and ultimately return that property to the proper parties." S.E.C. v. Pittsford Capital Income Partners, L.L.C., No. 06 CIV. 6353 TP, 2007 WL 61096, at *2 (W.D.N.Y. Jan. 5, 2007). Restraining the Receiver from accessing and utilizing these funds would frustrate that purpose, thereby violating the TRO and the Preliminary Injunction Order.

The Judgment Creditors have also filed contempt motions against the Receiver, leading to additional litigation. Even if the Judgment Creditors truly were not seeking to enforce their judgments, simply responding to the subpoenas diminishes the receivership estate and interferes with the status quo. See F.T.C. v. Med Resorts Int'l, Inc., 199 F.R.D. 601, 608-09 (N.D. Ill. 2001) (denying relief from stay and noting that, if forced to litigate in state court, "[n]ot only would the Receiver then have to take his attention away from other tasks, but the assets of the receivership estate would quickly be diminished"); see also Liberte Capital Grp., LLC, 462 F.3d at 551 ("The receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets.").

Moreover, as discussed below, the Judgment Creditors have now filed a Motion to Satisfy the Judgments (Docket No. 253), demonstrating that, if this argument was not disingenuous at the time that the Judgment Creditors filed their Opposition, it is certainly now moot.

Permitting the Judgment Creditors to seize the receivership assets, for the payment of over $400,000 in default judgments, would serve to reduce the total estate assets available to other claimants, including those who may have been harmed by the Defendants in this action, as well as Defendants' other creditors.  Making the Judgment Creditors whole, to the detriment of other creditors, would undermine the TRO and the PI Order, which mandate that the purpose of the receivership is an orderly and equitable administration of the Defendants' estates.  The Judgment Creditors must therefore comply with the litigation stay.

The Receiver has requested an award for his fees on this motion and the related litigation relating to the Judgment Creditors, against the Judgement Creditors' counsel, in the amount of $19,558.11.  The Court denies this request.  The Judgment Creditors and their counsel will not be responsible for the Receiver's fees leading up to the date on which this decision and order is issued, but risk being ordered to pay any future fees if they fail to comply with this order, or otherwise cause further depletion of the receivership assets, by additional litigation relating to their attempts to enforce the state court judgments outside of the claims process.

**B.     Judgment Creditors Motion to Satisfy Judgments**

After the Motion to Enforce the Stay had been fully briefed, the Judgment Creditors filed a Motion to Satisfy Judgments, which asks this Court "to issue an Order denying any and all motions of the [FTC, State of New York, and the Receiver] regarding the [Judgment Creditors'] collection activities of their judgments and allow judgment to be satisfied in full by the assets of the defendants held by [the Receiver]." Because this Motion is, in effect, simply an addendum to the Judgment Creditors'

opposition to the Motion to Enforce the Stay, and because this Court has already granted that motion and ordered the Judgment Creditors' to comply with the litigation stay, the Motion to Satisfy the Judgments is denied as moot.[7]

**C.    Receiver's Motion for Fees**

Also pending before this Court is the Receiver's Third Motion for Attorney Fees and Reimbursement of Expenses. (Docket No. 248.) The Receiver seeks compensation for legal and Receiver services rendered between August 1, 2015 and May 1, 2016 in the amount of $49,804.55,[8] compensation for the forensic accountant services of Chiampou, Travis, Besaw & Kershner LLP in the amount of $477.25, and expense reimbursement in the amount of $3,718.79.

The amount of a receiver's compensation is to be determined by the court in the exercise of its reasonable discretion. See S.E.C. v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). As this Court has previously noted, generally, "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). Whether a rate or fee is reasonable requires consideration of the totality of circumstances, including "'the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented.'" Byers, 590 F. Supp. 2d at 644 (quoting

---

[7] The Judgment Creditors' counsel neglected to sign the memorandum of law or the attorney affirmation that accompanied the motion. (See Docket Nos. 253 at unnumbered p. 9, 254 at unnumbered p. 6.) Given that the motion is moot, there is no need to correct the filing.

[8] This amount includes the $19,558.11 that the Receiver has expended on this motion and the related litigation relating to the Judgment Creditors, and for which the Receiver sought an award from the Judgment Creditors' counsel.

S.E.C. v. Fifth Ave. Coach Lines, Inc., 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)); see Arbor Hill, 522 F.3d at 190.

This Court has reviewed the detailed billing statements and expense report submitted by the Receiver, to which the parties were afforded an opportunity to object but declined to do so. (Docket Nos. 248, 251.) In light of the circumstances of this case, including but not limited to the significant time that the Receiver has spent opposing the motions brought by the Judgment Creditors, as well as the number of corporate defendants involved and the Receiver's obligation to assume control and take custody of all their assets, documents, and electronically stored information, this Court finds both the discounted hourly rates applied and the number of hours expended to be reasonable. Accordingly, the requested fees and expenditures are approved.

## IV. CONCLUSION

For the foregoing reasons, the Receiver's motion to enforce the stay is granted, and the Judgment Creditors are ordered to comply with that stay. The Receiver's motion for fees is also granted, and the Judgment Creditor's motion to satisfy judgments is denied as moot.

## V. ORDERS

IT HEREBY IS ORDERED, that the Receiver's Motion to Enforce Stay (Docket No. 229) is GRANTED;

FURTHER, that the actions brought in New York State Supreme Court by Samantha Kollatz (Index No. 804705/2015) and Lisa Miller (Index No. 806840/2015) are stayed;

FURTHER, that the Motion for Contempt brought against Gary M. Graber in Ms.

Kollatz's New York State Supreme Court case (Index No. 804705/2015) shall be withdrawn;

FURTHER, that the Receiver is authorized to record this order to facilitate its enforcement;

FURTHER; that Plaintiff's Motion for Leave to File Memorandum of Law in Support of Receiver's Motion to Enforce the Stay (Docket No. 236) is GRANTED;

FURTHER, that the Receiver's Third Motion for Attorney Fees and Reimbursement of Expenses (Docket No. 248) is GRANTED;

FURTHER, that the requested amounts of $49,804.55 for legal and Receiver services rendered between August 1, 2015 and May 1, 2016; $3,718.79 for expenses incurred by Hodgson Russ LLP; and $477.25 for the forensic accounting services of Chiampou, Travis, Besaw & Kershner LLP are APPROVED;

FURTHER, that the Receiver is authorized and directed to pay the amounts approved in this Decision and Order;

FURTHER, that Samantha Kollatz and Lisa Miller's Motion to Satisfy Judgments (Docket No. 253) is DENIED as moot.


SO ORDERED.

Dated: August 4, 2016
Buffalo, New York

                                               /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                             United States District Judge